# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

DEMARCUS RANTREZ ROBINSON                                              PETITIONER
ADC #150429


VS.                          5:18-CV-00018-KGB/JTR


WENDY KELLEY, Director,
Arkansas Department of Correction                                       RESPONDENT


## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

## I. Background

Pending before the Court is a § 2254 habeas Petition[1] filed by Petitioner, Demarcus Rantrez Robinson ("Robinson").[2] *Docs. 2 & 11.* Robinson's narrow habeas challenge arises from a major disciplinary he received on September 28, 2017, while he was incarcerated in the Delta Regional Unit of the Arkansas Department of Correction. *Doc. 2 at 2.* In this disciplinary, Lieutenant Brandon N. Butler charged Robinson with four code violations:

(1) banding together/demonstration;

(2) battery, use of force on an inmate;

(3) aggravated battery upon an inmate – use of weapon/physical force; and

(4) assault – verbal or written threat.[3]

---

[1] Although styled as a 28 U.S.C. § 2241 Petition, the Court will treat Robinson's Petition and Amended Petition as seeking relief pursuant to 28 U.S.C. § 2254. *See Crouch v. Norris*, 251 F.3d 720, 723 (8th Cir. 2001) (person in custody pursuant to the judgment of state court can obtain habeas relief only through § 2254, no matter how pleadings are styled; rejecting state prisoner's contention that his petition should be classified as § 2241 petition not subject to limitations of 28 U.S.C. § 2244).

[2] Robinson is serving a 10 year prison sentence imposed following his guilty plea on July 6, 2011 to first-degree battery, theft of property, and criminal mischief in Ashley County Circuit Court.

[3] Lt. Butler initially filed a Major Disciplinary Violation on September 26, 2017 which charged Robinson with the same four disciplinary violations. However, the narrative on the September 26 version is shorter than the final September 28 version. It appears the September 28 Major Disciplinary Violation was issued to provide more facts about what happened during the September 25 incident and to charge additional inmates with violations. Given the large number of inmates involved in the fight, this is not surprising. As a result, after the September 28 Major Disciplinary was filed, its earlier iteration, dated September 26, was dismissed without a hearing on September 29, 2017. *Doc. 9-4*, Exh. 3 (September 26 Violation); *Doc. 9-3*, Exh. 2 (September 28 Violation).

All of those charges arose from a fight involving numerous inmates that occurred on September 25, 2017.[4]

On October 3, 2017, at 2:44 p.m., a disciplinary hearing was conducted on the September 28 Major Disciplinary Violation against Robinson. *Doc. 9-3 at 2-3*. Robinson appeared, pleaded not guilty to the charges and stated: "I was not involved in this incident. I was served two disciplinaries on the incident. This is double jeopardy." *Id. at 2*. At approximately 2:55 p.m., Robinson was removed from the hearing "for not being quiet." *Id. at 3*. The disciplinary hearing officer found Robinson guilty of all but one of the charges, aggravated battery upon an inmate. *Id. at 2*. The hearing officer imposed sanctions of 60 days' commissary, phone, and visitation restriction; 23 days' punitive isolation, and a reduction in good-time class status to Class IV. *Id. at 3*.

Robinson appealed the disciplinary decision of the hearing officer to the Warden, then to the Disciplinary Hearing Administrator, and finally to Respondent Wendy Kelley. *Doc. 2 at 20-21*; *Doc. 9-5* (Major Disciplinary Appeal Form).

---

[4] According to the Disciplinary Violation, correctional officers initially were unable to contain the fighting. Even after additional staff were called, the inmates, including Robinson, refused to comply with direct orders and continued fighting. Staff exited, locked and secured the barracks. After retrieving MK-9 OC spray, handcuffs, and the video camera, staff returned to the barracks, at which point the inmates began "complying with direct orders." Robinson was not injured, but eight other prisoners were treated in the infirmary. Nine inmates, including Robinson, "were taken to restrictive housing for their involvement in the physical altercation." Seventeen inmates, including Robinson, were charged with the same four rule violations. *Doc. 9-3 at pp. 1-2*.

However, Robinson's appeal was rejected, at each step of the appeal process, based on ADC policy 17-08, which provides that: "If an inmate waives his/her right to appear and is found guilty, he/she cannot appeal the decision." *Doc. 2 at 20-21* (quoting AD 17-08, Inmate Disciplinary Manual, Section H. Major Disciplinary Appeal Process, #1). In other words, because Robinson was removed from his disciplinary hearing for refusing to be quiet, he "waiv[ed] his/her right to appeal" and lost his right to "appeal the decision" finding him guilty of the disciplinary infractions.

On January 18, 2018, Robinson initiated this habeas action, and on March 14, 2018, he supplemented the Petition. He claims that the ADC's disciplinary proceedings violated his rights under the Double Jeopardy Clause and the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution. He requests relief in the form of: (1) reinstatement to Class I-C; (2) vocational credit for the hours spend in punitive isolation; (3) expungement of the Incident Report; (4) being allowed to complete vo-tech, which apparently is necessary to be considered for parole; and (5) immediate release from segregated confinement. *Doc. 11*.

Respondent argues, in a Response and Supplemental Response, that Robinson's habeas claims are: (1) not cognizable in a federal habeas action; (2)

procedurally defaulted; and (3) fail on the merits. *Docs. 9 & 14.* Although given an opportunity to file a Reply Brief, Robinson failed to do so. *Docs. 10 & 16.*

For the reasons discussed below, the Court agrees with Respondent and recommends that Robinson's Petition for a Writ of Habeas Corpus be denied and the case dismissed, with prejudice.

## II. Discussion

### A. Robinson Has Failed To State A Cognizable Habeas Claim

It is undisputed that the punishment for Robinson's disciplinary conviction did not include *the loss of any earned good-time credit*.[5] Thus, Robinson is not in a position to argue that, as a result of the disciplinary conviction, the length of his confinement has been extended.

The law is well established that, if a § 2254 habeas petitioner is not challenging the validity of his criminal conviction or sentence, or the length of his confinement, a federal court lacks jurisdiction. *Spencer v. Haynes*, 774 F.3d 467, 469-70 (8th Cir. 2014) ("As we stated in *Kruger v. Erickson*, "[i]f the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy."); *Archuleta v.*

---

[5] If a disciplinary conviction involves the *loss of good time credits*, which directly affects the length of a prisoner's confinement, then a habeas action is a prisoner's *exclusive remedy* to challenge the constitutionality of the disciplinary conviction. *See Portley-El v. Brill*, 288 F.3d 1063, 1066-67 (8th Cir. 2002).

*Hedrick*, 365 F.3d 644, 647 (8th Cir. 2004) ("If the state prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy.").

Accordingly, Robinson's habeas Petition should be dismissed, with prejudice.

**B.     Robinson's Claims Are Not Cognizable Under § 1983**

Before dismissing Robinson's habeas petition, the Court will consider whether Robinson's claims raise any "potentially viable" conditions of confinement claims that he might pursue under 42 U.S.C. § 1983.  *See Spencer*, 774 F.3d at 469-70 (when a habeas petition asserts conditions of confinement claims that are not cognizable in habeas, before dismissing the petition, the court should consider whether a petitioner raises a "potentially viable" constitutional claim and, if so, whether to recharacterize the claim as a civil rights action and allow petitioner the opportunity to pursue it as such).

The Court construes Robinson's pleadings as raising two constitutional claims arising from the three major disciplinary convictions related to his involvement in the September 25, 2017 fight:  (1)  his rights under the Double Jeopardy Clause were violated because he allegedly faced two disciplinaries for the same conduct;  and (2) his rights under the Due Process Clause were violated by the disciplinary proceeding.  For the reasons explained below, neither claim is potentially viable, *i.e.*, at the mandatory initial screening stage, both of those claims would be dismissed, as

a matter of law. *See* 18 U.S.C. § 1915A (requiring screening and dismissal of any claims which fail to state a claim upon which relief may be granted).

### 1. Double Jeopardy Claim

Under the Double Jeopardy Clause of the Fifth Amendment, no person shall "be subject for the same offense to be tried twice put in jeopardy of life or limb." U.S. CONST. amend. V. First, administrative disciplinary proceedings are not capable of supporting a double jeopardy claim. *Kerns v. Parratt*, 672 F.2d 690, 691 (8th Cir. 1982) (per curiam) ("Administrative proceedings based upon violation of prison disciplinary rules did not place defendant 'in jeopardy' for purposes of the double jeopardy clause"). Second, there is *no factual basis* for Robinson's belief that he was charged twice for the same disciplinary infractions. The first disciplinary charges in the September 25, 2017 Major Disciplinary (PID # 0230729), were dismissed on September 29, without any disciplinary hearing or a determination on the merits of the alleged disciplinary violations. *Doc. 9 at 7 & Resp. Ex. 3, Doc. 9-4*. Thus, jeopardy did *not* "attach" when Robinson was charged with the September 26 Major Disciplinary that was dismissed on September 29 *before* the October 3 disciplinary hearing that resolved the disciplinary charges in the September 28, 2017 Major Disciplinary. *See, e.g., United States v. Vinson*, 414 F.3d 924, 928 (8th Cir. 2005) (jeopardy never attached to earlier state charges which were dismissed before

any jury was empaneled and sworn); *Crist v. Bretz*, 437 U.S. 28, 37 n. 15 (1978) ("In nonjury trials jeopardy does not attach until the first witness is sworn.").

### 2. Due Process

In order to prevail on a Fourteenth Amendment due process claim, a prisoner "must first demonstrate that he was deprived of life, liberty, or property by government action." *See Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). Here, any viable due process claim must be based on the denial of a liberty interest. Absent a constitutionally protected liberty interest, Robinson has no cognizable claim for relief under § 1983.

A prisoner's liberty interests are limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or to actions "which inevitably affect the duration of [a prisoner's sentence." *Sandin v. Conner*, 515 U.S. 472, 483, 487 (1995). As discussed above, the punishment Robinson faced as a result of the disciplinary proceeding did *not* impact the duration of his sentence. Additionally, as discussed below, Robinson's punishment did not result in "atypical and significant hardship" beyond the ordinary incidents of prison life.

The Eighth Circuit has held, repeatedly, that prisoners do not have a liberty interest in maintaining a particular classification level. *Sanders v. Norris*, Case No. 05-2398, 2005 WL 2861952 (8th Cir. Nov. 2, 2005) (unpublished opinion) (holding

that reduction of class status as a result of violating prison policy failed to state a claim); *Hartsfield v. Dep't of Corr.,* 107 Fed.Appx. 695, 696 (8th Cir. 2003) (unpublished per curiam) (no liberty interest in particular classification); *Madewell v. Roberts*, 909 F.2d 1203, 1207 (8th Cir. 1990) (ADC inmate has no right to consideration of Class I status); *Strickland v. Dyer*, 628 F.Supp. 180, 181 (E.D.Ark. 1986) (because Arkansas law does not protect a prisoner's right to any particular classification and there is no federally protected right regarding classification, ADC prisoner could not prevail on claim that he was deprived of due process due to disciplinary penalty of two-step class reduction).

In addition, in *Sandin*, the Court explicitly held that temporarily placing a prisoner in punitive isolation, and suspending his privileges while so confined, does not rise to the level of an "atypical and significant" hardship.[6] *Sandin*, 515 U.S. at 484 (thirty-day assignment to administrative segregation and corresponding loss of privileges did not implicate a protected liberty interest and due process protection);

---

[6] In contrast, an *indefinite assignment* to a *supermax facility* could result in an atypical and significant hardship sufficient to implicate a *Sandin* liberty interest capable of supporting a due process claim. *Wilkinson v. Austin*, 545 U.S. 209 (2005). Robinson suggests in his Supplemental Petition, filed on March 14, 2018, that as a result of the disciplinary he has been confined in maximum security at Varner Supermax, and is unable to go to the law library. However, he does *not* allege any facts: (1) suggesting that this assignment is indefinite; (2) explaining why this assignment has resulted in an atypical and significant hardship; or (3) supporting a separate claim based on an assignment to a maximum security facility. Finally, an attachment to Robinson's pleading indicates that, on January 10, 2018, prison officials conducted a sixty-day review of Robinson's restrictive housing status. This review process makes it clear that Robinson's housing assignment is *not* indefinite. *Doc. 11 at 14* (Restrictive Housing Status Review).

9

*see also Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship."); *Portley–El v. Brill*, 288 F.3d 1063, 1065-66 (8th Cir. 2002) (holding that thirty days in punitive segregation was not an atypical and significant hardship under *Sandin* ); *Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002) (inmate's placement in administrative segregation for twenty-six months without a disciplinary charge or conviction, after being sentenced to death for killing a prison guard, did not "demonstrate that his liberty interest was curtailed"); *Scott v. Coleman*, 493 Fed.Appx. 810, 2012 WL 5233519 (8th Cir. Oct. 23, 2012) (unpublished decision) (upholding district court's finding that plaintiff inmate failed to state a due process claim after assigned to punitive isolation for 158 days without a hearing); *Driscoll v. Youngman*, Case No. 95–4037, 1997 WL 581072 (8th Cir. Sept. 22, 1997) (unpublished decision) (finding that 135 days in disciplinary and administrative segregation without "meaningful exercise, natural light or adequate time in the library" did not satisfy the *Sandin* standard); and *Furlough v. Brandon*, 2009 WL 4898418 (E.D. Ark. Dec. 15, 2009) (inmate plaintiff failed to state a due process claim after being assigned to administrative segregation for nearly nine months).

Robinson also refers to the negative impact of the disciplinary on his ability to be paroled. For example, he alleges that as a collateral consequence of his

reduction in class status, he is ineligible for the vo-tech training needed to be considered for parole. Assuming this is true, it fails to state a cognizable constitutional claim.

The Due Process Clause does not create a protected liberty interest in the "possibility" of parole *before* the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The Arkansas statutes and regulations governing parole merely create the *possibility* of parole, but do *not* create any right to parole that triggers due process protection. *See Pittman v. Gaines*, 905 F.2d 199, 201 (8th Cir. 1990); *Hamilton v. Brownlee*, 237 Fed. Appx. 114, 115 (8th Cir. 2007) (citing Ark. Code Ann. § 16–93–701(a)(1) (2006) (other citations omitted)); *see also Poole v. Straughn*, 2015 WL 8295612 (E.D. Ark. Oct. 28, 2015) (habeas petitioner claiming that he was being unconstitutionally held beyond his parole eligibility date because of a disciplinary conviction did not state a viable claim for habeas relief); *Garrett v. Hobbs*, 2013 WL 2370628, *1 (E.D. Ark. May 29, 2013) (same).

Because Robinson's double jeopardy and due process claims would not survive the screening process mandated by 28 U.S.C. § 1915A, there is no need to offer Robinson the opportunity to convert this habeas action into an action under 28 U.S.C. § 1983.

## III. Conclusion

IT IS THEREFORE RECOMMENDED that the Petition for a Writ of Habeas Corpus, (*docs. 2 & 11*), be DENIED, and that the case be DISMISSED, WITH PREJUDICE. IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

Dated this 4th day of September, 2018.

_____
UNITED STATES MAGISTRATE JUDGE